1   HOLLAND & KNIGHT LLP
    Jennifer L. Weaver, SBN 200485
2   Eddie A. Jauregui, SBN 297986
    400 South Hope Street, 8th Floor
3   Los Angeles, CA  90071
    Telephone:  213.896.2400
4   Fax:  213.896.2450
    E-mail:  jennifer.weaver@hklaw.com
5            eddie.jauregui@hklaw.com

6   Attorneys for Defendant
    Cedars-Sinai Medical Center
7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA          Case No.:  2:20-CV-08439-WLH-PVC
    AND THE STATE OF CALIFORNIA
12  *ex rel*. Oak Bull, LLC, a New Mexico,   [*Assigned to the Hon. Wesley L. Hsu,*
    LLC,                              *United States District Judge*]
13
                Plaintiffs,           **DEFENDANT CEDARS-SINAI**
14                                    **MEDICAL CENTER'S NOTICE OF**
        v.                            **MOTION AND MOTION FOR**
15                                    **SANCTIONS; MEMORANDUM OF**
    CEDARS-SINAI MEDICAL CENTER;      **POINTS AND AUTHORITIES IN**
16  HYUN BAE, M.D.; JASON M.          **SUPPORT THEREOF;**
    CUELLAR, M.D.; RICK               **[PROPOSED] ORDER**
17  DELAMARTER, M.D.; MICHAEL
    KROPF, M.D.; TODD H. LANMAN,
18  M.D.; ALEXANDRE RASOULI, M.D.,    Date:       June 6, 2025
                                      Time:       1:30 p.m.
19              Defendants.           Courtroom:  9B

20                                    Action Filed: September 9, 2020
                                      SAC Filed:    February 21, 2025
21                                    Trial Date:   TBD

22

23  ///

24  ///

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on June 6, 2025, at 1:30 p.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Wesley L. Hsu, Courtroom 9B, of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Defendant Cedars-Sinai Medical Center ("Cedars-Sinai") will, and hereby does, move this Court to issue an order imposing sanctions pursuant to its inherent authority to sanction litigation misconduct that abuses the judicial process.

In the face of a facially deficient complaint, the relator in this action apparently sought to buttress his arguments by using illicitly obtained documents and information. That, simply, cannot stand—litigants cannot violate the law in order to salvage otherwise lacking claims.

In an effort to shore up his woefully inadequate complaint—which this Court dismissed without prejudice—Dr. Hooman Melamed, the alter ego of Relator Oak Bull, LLC ("Relator" or "Dr. Melamed"), appears to have furtively gained access to Cedars-Sinai's electronic medical records system and copied confidential medical records for use in crafting his Second Amended Complaint ("SAC"). Dr. Melamed's actions were both deceptive and illegal. He cannot be permitted to utilize these tainted records to support the allegations in his complaint.

Dr. Melamed previously engaged in similar misconduct, surreptitiously and without authorization accessing Cedars-Sinai's medical records database to fish for documents to prop up his original complaint. His counsel was repeatedly notified of these breaches, and they assured Cedars-Sinai's counsel that Dr. Melamed had been admonished and instructed to cease further unlawful actions. It is now evident that Dr. Melamed did not heed those warnings, and he has escalated his misconduct, this time by using unwitting nurses' computers to access sensitive, confidential patient information while the nurses were occupied during surgeries.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-1-

Necessity compels this Court to sanction Dr. Melamed's repeated unlawful conduct by (1) striking the unlawfully obtained documents[1] from the SAC, (2) forbidding Dr. Melamed from any further unauthorized access of Cedars-Sinai's computer systems, and (3) awarding Cedars-Sinai compensatory costs and fees.

Only through these sanctions can the Court ensure the integrity of the litigation process, protect Cedars-Sinai from further monetary and reputational harm, and demonstrate to Dr. Melamed that his misconduct will not be tolerated.

This Motion is based on this Notice, the Memorandum of Points and Authorities in Support of the Motion for Sanctions, and all papers, pleadings, documents, arguments of counsel, and other materials presented before or during the hearing on this motion, and any other evidence and argument the Court may consider.

This Motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on March 28, 2025. The parties thoroughly discussed the substance and potential resolution of the Motion by videoconference and were unable to reach an agreement that would obviate the need for the Motion.

Dated: April 24, 2025

HOLLAND & KNIGHT LLP

By: _/s/ Eddie A. Jauregui_
Eddie A. Jauregui
Jennifer L. Weaver

*Attorneys for Defendant,*
*Cedars-Sinai Medical Center*

---

[1] The offending documents are attached as Exhibits 28-31, 34-37, 40-43, 45-49, and 52-54, and serve as the basis for Paragraphs 154-93, 195-98, 204-42, 318-27, 329-33, 342-48, 362-63, 365-71, 373-78, 380-86, 388-92, 410-11, and 413-17 in the SAC.

-2-

DEFENDANT CEDARS-SINAI'S
MOTION FOR SANCTIONS                                    2:20-CV-08439-WLH-PVC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   PROCEDURAL AND FACTUAL HISTORY ........................................ 1

    A.    Dr. Melamed Accessed Patient JM's Medical Records Just Two Days After the Hearing. ................................................................ 4

    B.    Relator Filed the SAC, Attaching Medical Records for 21 Additional Patients That Were Unlawfully Accessed and Exported. ................................................................................... 5

    C.    Cedars-Sinai Reviewed the Additional 21 Patient Records and Determined That They Were Surreptitiously Obtained and Retained by Dr. Melamed. ................................................. 6

        1.    Dr. Melamed Improperly Accessed the Eight ADR Patient Records in 2019 and 2020 But Failed to Destroy Them as Required and Promised. .................... 6

        2.    Dr. Melamed Used Five Nurses' Computers to Bypass Detection and Access the Concurrent Surgery Patient Records. ................................................. 6

    D.    Relator's Counsel Has Not Refuted the Factual Allegations Related To Dr. Melamed's Unauthorized Access and Retention of Records. ................................................................ 8

III.  LEGAL STANDARD ............................................................................. 9

IV.   ARGUMENT .......................................................................................... 9

    A.    Dr. Melamed's Deceptive and Unlawful Acquisition of Patient Records Constitutes Sanctionable Bad Faith Conduct. ................. 9

        1.    Dr. Melamed's deceitful actions are similar to the vigilante discovery sanctioned by other courts. ................................... 10

        2.    Dr. Melamed's misconduct violated multiple federal and state laws. ................................................................. 12

    B.    The Court Should Exclude the Illicitly Obtained Evidence, Order Dr. Melamed to Cease His Unlawful Access of Patient Records, and Award Costs and Fees to Cedars-Sinai. ................................... 15

V.    CONCLUSION ...................................................................................... 17

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

DEFENDANT CEDARS-SINAI'S MOTION FOR SANCTIONS                    2:20-CV-08439-WLH-PVC

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**Cases**

*Am. Career Coll. Inc. v. Medina*,
673 F. Supp. 3d 1139 (C.D. Cal. 2023)................................................................ 6

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ................................................................ 9, 16

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ................................................................ 15

*Ashman v. Solectron Corp.*,
No. C 08-1430JF(HRL), 2008 WL 5071101 (N.D. Cal. Dec. 1, 2008)....... 15, 16

*Biden v. Ziegler*,
737 F. Supp. 3d 958 (C.D. Cal. 2024) ................................................................ 14

*In re Bofl Holding, Inc. Sec. Litig.*,
318 F.R.D. 129 (S.D. Cal. 2016) ................................................................ 16

*Campbell Indus. v. M/V Gemini*,
619 F.2d 24 (9th Cir. 1980) ................................................................ 15

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ................................................................ 9

*Fayemi v. Hambrecht & Quist, Inc.*,
174 F.R.D. 319 (S.D.N.Y. 1997)................................................................ 16

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ................................................................ 9

*Henry v. Gill Indus., Inc.*,
983 F.2d 943 (9th Cir. 1993) ................................................................ 15

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ................................................................ 15

*Link v. Wabash R. Co.*,
370 U.S. 626 (1962) ................................................................ 9

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT CEDARS-SINAI'S
MOTION FOR SANCTIONS

2:20-CV-08439-WLH-PVC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*Merrick v. Paul Revere Life Ins. Co.*,
　　500 F.3d 1007 (9th Cir. 2007) ......................................................................... 15

*Site 2020 Inc. v. Superior Traffic Servs., LLC*,
　　No. CV 21-63-M-DLC, 2023 WL 4248715 (D. Mont. June 29,
　　2023) ........................................................................................... 9, 10, 11, 16

*U.S. v. Christensen*,
　　828 F.3d 763 (9th Cir. 2015) .......................................................................... 14

*U.S. v. Kinetic Concepts, Inc.*,
　　No. CV0801885BROAGRX, 2017 WL 8948062 (C.D. Cal. Aug. 21,
　　2017) .............................................................................................................. 15

*U.S. v. Nosal*,
　　844 F.3d 1024 (9th Cir. 2016) ........................................................................ 14

*Wharton v. Calderon*,
　　127 F.3d 1201 (9th Cir. 1997) ........................................................................ 16

*Xyngular Corp. v. Schenkel*,
　　200 F. Supp. 3d 1273 (D. Utah 2016), *aff'd sub nom. Xyngular v.
　　Schenkel*, 890 F.3d 868 (10th Cir. 2018) .............................................. 9, 10, 15

**Statutes, Rules, & Regulations**

Cal. Civ. Code § 56.10 .......................................................................................... 13

Cal. Civ. Code § 56.10(a) ..................................................................................... 13

Cal. Civ. Code § 56.36(c)(1) ................................................................................ 13

Cal. Penal Code § 502(a) ...................................................................................... 14

Cal. Penal Code § 502(c)(2) ................................................................................. 14

42 C.F.R. § 164.502(a) ......................................................................................... 12

45 C.F.R. § 160.103 .............................................................................................. 13

45 C.F.R. § 164.402 .............................................................................................. 13

45 C.F.R. § 164.502(j)(1) ..................................................................................... 12

78 Fed. Reg. 5566, 5640 (Jan. 25, 2013) ............................................................ 12

-iii-

18 U.S.C. § 1030(a)(2)(C) ............................................................................... 14

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

DEFENDANT CEDARS-SINAI'S
MOTION FOR SANCTIONS                    2:20-CV-08439-WLH-PVC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Upon dismissing the First Amended Complaint ("FAC"), the Court gave Dr. Hooman Melamed, the alter ego of Oak Bull, LLC ("Relator" or "Dr. Melamed"), a second chance to salvage his legally inadequate claims and detailed the factual allegations he would need to include in order to state a claim. Dr. Melamed apparently took this as an invitation to ignore patient privacy laws, cybersecurity laws, and the Federal Rules of Civil Procedure. He responded by deceptively and unlawfully obtaining medical records for patients he was not treating by repeatedly using computers logged on with credentials belonging to multiple, unwitting nurses *during surgeries on other patients*. This misconduct is not only an affront to the established rules of engagement and fair play in litigation, but it also violated multiple federal and state laws, including the federal Health Insurance Portability and Accountability Act ("HIPAA") and California's Confidentiality of Medical Information Act ("CMIA"). These transgressions cannot be condoned, and the Court should exercise its inherent authority to prevent Relator from benefiting and Defendant Cedars-Sinai Medical Center from bearing costs as a result of Dr. Melamed's bad behavior. Specifically, the Court should (1) excise the illicitly obtained information from the Second Amended Complaint ("SAC"), (2) order Dr. Melamed to cease his illegal snooping in patient records, and (3) award Cedars-Sinai compensatory costs and fees.

### II.   PROCEDURAL AND FACTUAL HISTORY

Dr. Melamed is an orthopedic spine surgeon with medical staff privileges at Cedars-Sinai Marina Hospital d/b/a Cedars-Sinai Marina del Rey Hospital ("Marina del Rey Hospital"). Docket Entry ("D.E.") 103, ¶¶ 11, 95; Exhibit 1, Declaration of Joanne Laguna, ¶ 4. Marina del Rey Hospital and Defendant Cedars-Sinai Medical Center ("Cedars-Sinai") are separate and distinct legal entities and medical facilities. *Id.*, ¶ 6. Relator has not had medical staff privileges at or any other affiliation with Cedars-Sinai since 2015. *Id.*, ¶ 5; D.E. 103, ¶ 95. Relator filed his *qui tam* complaint

-1-

under seal in September 2020. D.E. 1. Since the United States and State of California investigated and declined to intervene, Relator has litigated this case in the name of the Government. D.E. 36, 38.

After service of the complaint, Cedars-Sinai identified protected health information ("PHI") that Relator failed to redact from his original complaint prior to filing on the public docket. This public release of PHI violated both HIPAA and the CMIA, and Cedars-Sinai was required to report these breaches to the relevant authorities. *See* Exhibit 2, Declaration of Ginny Kim, ¶¶ 3-6. Cedars-Sinai also determined that Dr. Melamed had unlawfully accessed medical records of patients at Cedars-Sinai that were not his patients. *Id.*, ¶ 5. He was able to access these records because Cedars-Sinai and Marina del Rey Hospital share a common electronic medical records ("EMR") software system despite being distinct entities and hospitals. Exhibit 1, ¶ 7. This technical ability to access Cedars-Sinai's EMR system does not mean that Dr. Melamed was authorized to access the records of Cedars-Sinai patients that he was not treating. *Id.*, ¶ 8. In a letter dated May 22, 2024, Cedars-Sinai informed Relator's counsel of his HIPAA and CMIA violations. *See* Exhibit 3. In that communication with Relator's counsel, Cedars-Sinai also explicitly requested that "Dr. Melamed and your firm immediately destroy any other improperly accessed patient health information that Dr. Melamed may have accessed in violation of HIPAA and/or the California Medical Practice Act." *Id.*

Following up on that letter, on June 17, 2024, counsel for Cedars-Sinai and Relator had a phone call to discuss Relator's preparation of the FAC. *See* Exhibit 4, Declaration of Jennifer Weaver, ¶ 6. On that call, counsel for Cedars-Sinai once again noted the HIPAA and state law breaches by Dr. Melamed, explaining that Cedars-Sinai was aware that Dr. Melamed was accessing records for patients at Cedars-Sinai where he no longer had medical staff privileges and therefore had no basis for accessing patient records. *Id.* Cedars-Sinai's counsel explained that Dr. Melamed had clearly breached HIPAA and California's privacy regulations and that this would necessarily

-2-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

result in mandatory reporting by Cedars-Sinai to federal and state regulators. *Id.*, ¶ 7. Relator's counsel was notified that Dr. Melamed's continued access to Cedars-Sinai's EMR system would be closely monitored. *Id.*, ¶ 8. Relator's counsel responded that his client told him that any records he was reviewing were for his own patients. *Id.*, ¶ 9. Relator's counsel went on to state that if records were not related to Dr. Melamed's own patients, he would tell Dr. Melamed to stop accessing those records. *Id.*, ¶ 10.

Relator filed the FAC on August 30, 2024. D.E. 72. A few weeks later, Dr. Melamed entered into a settlement agreement that put an end to his other spurious litigation campaign against Cedars-Sinai. *See* Exhibit 5. In that agreement, which he signed on September 25, 2024, Dr. Melamed agreed to abide by Marina del Rey Hospital's Medical Staff Bylaws, Code of Conduct, and Privacy Practices and to "comply with all applicable requirements of the federal Health Insurance Portability and Accountability Act and any other applicable state or federal health information privacy laws." *Id.*, §§ 3.1, 3.2, 3.4. He also specifically agreed that:

> [He would] not access, use, acquire, copy, maintain, or disclose any patient records or patient information within any information management system, electronic health records system, or other technology system containing records or information maintained by [Cedars-Sinai] or any affiliate of [Cedars-Sinai] (collectively, "Cedars-Sinai Systems"), unless the following conditions are met at the time the records or information is accessed:
>
> (a) the records and information directly relate to a patient who is currently under Dr. Melamed's care at [Marina del Rey] Hospital at the time of access to the records or information; or
>
> (b) if the patient is not currently under Dr. Melamed's care at [Marina del Rey] Hospital, Dr. Melamed has obtained

DEFENDANT CEDARS-SINAI'S
MOTION FOR SANCTIONS

2:20-CV-08439-WLH-PVC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

written consent from the patient to access such records or information.

*Id.*, § 3.4. Dr. Melamed further acknowledged that Cedars-Sinai would "monitor his access to patient information and use of Cedars-Sinai Systems" and committed to "respond to inquiries from the Cedars-Sinai Privacy Office regarding any access and use of patient information from Cedars-Sinai Systems in a timely, truthful and cooperative manner." *Id.*

In October 2024, Defendants filed motions to dismiss the FAC, D.E. 82, 83, 87, and the Court held a hearing on January 24, 2025. D.E. 101. At that hearing, the Court dismissed Relator's FAC without prejudice, noting significant gaps and deficiencies in the documents relied upon by Relator in the FAC. The Court specifically called out deficiencies in Relator's allegations based on the medical records attached to the FAC. Any further amendment would need to address these shortcomings.

**A.    Dr. Melamed Accessed Patient JM's Medical Records Just Two Days After the Hearing.**

Because Dr. Melamed had previously unlawfully accessed Cedars-Sinai's EMR system for purposes of obtaining medical records for this action, his access was actively monitored by Cedars-Sinai's Health Information Department. *See* Exhibit 1, ¶ 15. Through this monitoring, Cedars-Sinai was alerted that Dr. Melamed accessed Patient JM's medical records on January 26, 2025, just two days after the hearing on Defendants' motions to dismiss. *Id.*, ¶ 16. The Cedars-Sinai Health Information Department contacted Dr. Melamed to inquire about his access. *Id.*, ¶ 17. He responded that, despite the fact that other surgeons operated on Patient JM nearly *15 years ago*, this patient had allegedly come to Dr. Melamed for a second opinion. *Id.*, ¶ 18. Dr. Melamed provided no support for this assertion. *Id.* The next day, despite being put on notice of his repeated breaches of various patient privacy laws, Dr. Melamed exported the exact medical records for Patient JM that are attached to the SAC in Exhibit 39. *Id.*, ¶ 19. He then accessed Patient JM's medical records again on January 31, 2025.

-4-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*Id.*, ¶ 20. Thereafter, Cedars-Sinai has no record of Dr. Melamed's *own* credentials being used to view or export the medical records he attached to the SAC. *Id.*, ¶ 21.

### B. Relator Filed the SAC, Attaching Medical Records for 21 Additional Patients That Were Unlawfully Accessed and Exported.

Relator filed the SAC on February 21, 2025. D.E. 103. The SAC maintains the same five causes of action and the same three underlying theories of liability from the FAC. Relator, however, has added 21 additional sets of medical records in an attempt to remedy the deficiencies noted by the Court in dismissing his FAC. Cedars-Sinai maintains that the SAC remains materially deficient and has once again moved to dismiss the complaint.[2] D.E. 111.

In the SAC, Relator attaches new medical records for 13 patients related to his allegations about concurrent surgeries[3] and eight patients related to his allegations about ADR procedures.[4] Each of the 13 exhibits related to concurrent surgeries appear to contain undated photographs of a computer monitor displaying excerpts of medical records. The eight exhibits related to ADR procedures contain date stamps indicating that they were printed from Cedars-Sinai's EMR system at various points in 2019 and 2020.

---

[2] On April 4, 2025, Defendants filed separate motions to dismiss the SAC. D.E. 111, 112, 113. Given the serious nature of Dr. Melamed's discovery abuses and violations of state and federal law, Cedars-Sinai files this separate motion to excise those unlawfully and illegally obtained records from the SAC and to remediate the damage caused by Dr. Melamed's repeated breaches of Cedars-Sinai's medical records system.
[3] The relevant patients and exhibits for concurrent surgeries are: Patient JO (Exhibit 28); Patient HR (Exhibit 29); Patient DMD (Exhibit 30); Patient MT (Exhibit 31); Patient KH (Exhibit 34); Patient EL (Exhibit 35); Patient LC (Exhibit 36); Patient LM (Exhibit 37); Patient JM (Exhibit 39); Patient SP (Exhibit 40); Patient SK (Exhibit 41); Patient MF (Exhibit 53); and Patient BT (Exhibit 54).
[4] The relevant patients and exhibits for ADR procedures are: Patient MM (Exhibit 42); Patient SBK (Exhibit 43); Patient DE (Exhibit 45); Patient GF (Exhibit 46); Patient DJ (Exhibit 47); Patient MC (Exhibit 48); Patient HT (Exhibit 49); and Patient SG (Exhibit 52).

DEFENDANT CEDARS-SINAI'S                    2:20-CV-08439-WLH-PVC
MOTION FOR SANCTIONS

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

**C.    Cedars-Sinai Reviewed the Additional 21 Patient Records and Determined That They Were Surreptitiously Obtained and Retained by Dr. Melamed.**

Upon reviewing the 21 exhibits first added in the SAC, Cedars-Sinai set out to determine how Dr. Melamed accessed the records, particularly in light of (1) the repeated, explicit demands that he destroy all illicitly obtained medical records, and (2) his legal obligation to cease accessing Cedars-Sinai's EMR system to review medical records for patients that are not his own patients. Exhibit 1, ¶ 22; Exhibit 5, § 3.4. The Cedars-Sinai Health Information Department pulled the access audit records that show every login credential that was used to access the relevant patient records. Exhibit 1, ¶ 23.

1.    Dr. Melamed Improperly Accessed the Eight ADR Patient Records in 2019 and 2020 But Failed to Destroy Them as Required and Promised.

Review of those reports showed that Dr. Melamed had accessed and exported the medical records for each of the eight ADR procedure patients at various points in 2019 and 2020, preceding the filing of his original *qui tam* complaint. *Id.*, ¶ 24. Cedars-Sinai has no record that any of these patients were ever seen by Dr. Melamed, nor that they came to Dr. Melamed for a second opinion. *Id.*, ¶ 25. These records were accessed and exported by Dr. Melamed prior to the May 2024 letter and June 2024 phone call in which Cedars-Sinai demanded that Dr. Melamed destroy medical records that he improperly accessed. It is evident that they were never destroyed as required by law, and as explicitly promised by Relator's counsel.

2.    Dr. Melamed Used Five Nurses' Computers to Bypass Detection and Access the Concurrent Surgery Patient Records.

Other than Patient JM's records, which Dr. Melamed admitted he accessed immediately following the hearing on the motion to dismiss, Cedars-Sinai found no record of Dr. Melamed's login credentials being used to access the 12 remaining

-6-

concurrent surgery patients. *Id.*, ¶ 26. For these 12 concurrent surgery patients, the access audit reports showed that the patients' records were accessed by four operating room nurses and one post-anesthesia care unit nurse at Marina del Rey Hospital.[5] *Id.*, ¶ 27. Based on these reports, between February 5, 2025, and February 21, 2025, five different nurses' computers and credentials were used to access Cedars-Sinai's EMR database and to view the documents shown in Exhibits 28-31, 34-37, 40-41, and 53-54. *Id.*, ¶ 28. None of these records were exported or printed. *Id.*, ¶ 29. Time stamps in the audit reports show that each of the five nurses were taking part in surgeries during the time period when the records were accessed using their credentials. *Id.*, ¶ 30. Conspicuously, the same surgeon performed each of the surgeries that were taking place at the time the records were accessed—Dr. Melamed. *Id.*, ¶ 31.

Cedars-Sinai and Marina del Rey Hospital human resources personnel interviewed each of the five nurses whose credentials were used to access the relevant patient records. *Id.*, ¶ 32. Each nurse vehemently denied accessing any of these patients' medical records. *Id.*, ¶ 33. They explained that their practice was to log into the EMR system at the beginning of the surgery using a mobile computer station in the operating room. *Id.*, ¶ 34. The nurses, however, were not always physically present in front of their computers, which remained logged in during the entire length of the surgeries. *Id.*, ¶ 35. The access audit reports showed that these nurses' credentials were used to view the patient records at times when the surgeon, Dr. Melamed, was not as actively involved in the surgery. *Id.*, ¶ 36. Specifically, access to the medical records happened either at the beginning of the surgery, before Dr. Melamed scrubbed in, or after the surgery ended, when the nurses often leave to accompany the patients to the post-anesthesia care unit, leaving Dr. Melamed in the operating room with their computer accessible. *Id.*, ¶ 37.

---

[5] The thirteenth medical record is the set of records for Patient JM, which Dr. Melamed acknowledged he accessed. Exhibit 1, ¶ 18. This patient's records were accessed by Dr. Melamed on January 26, 2025, January 27, 2025, and January 31, 2025. *Id.*, ¶¶ 16, 19-20.

-7-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

One of the nurses, Anina Manalastas, signed a declaration confirming that (1) she did not share her login credentials with anyone, (2) that she did not personally access the records in question or know that they had been accessed using her login information, and (3) that the records were accessed when she was occupied with a patient at the end of a surgery performed by Dr. Melamed. *See* Exhibit 6, ¶ 5, 11, 13-15. Access audit reports show that these records, belonging to Patients MF and BT, were accessed using Ms. Manalastas' login credentials on February 21, 2025 at 11:48 and 11:51 a.m.—mere hours before Relator filed the SAC.[6] *See* Exhibit 7.

**D.    Relator's Counsel Has Not Refuted the Factual Allegations Related To Dr. Melamed's Unauthorized Access and Retention of Records.**

On March 26, 2025, counsel for Cedars-Sinai notified Relator's counsel of Dr. Melamed's breaches of its EMR database and unauthorized access to patients' medical records—the third such notice. *See* Exhibit 8. In that letter, Relator's counsel was asked "if you contend Dr. Melamed was actually treating Patient JM on or around January 26 and 27, 2025, when he accessed his records, please provide us with documentation confirming the alleged treatment." *Id.* This request was renewed during the parties' March 28, 2025 meet-and-confer with respect to all of the patient records Dr. Melamed unlawfully accessed. Exhibit 4, ¶ 13. Counsel for Cedars-Sinai emphasized that Relator's counsel needed to confirm whether Dr. Melamed treated the patients whose records he accessed so that Cedars-Sinai could determine whether a HIPAA or CMIA breach had occurred and whether breach reports were required. *Id.*, ¶ 14. Relator's counsel has provided no evidence that Dr. Melamed ever treated any of the 21 patients in question, much less that he accessed the patients' records for treatment purposes. *Id.*, ¶ 15. Relator's counsel also never refuted the factual allegations in the March 26

---

[6] These records are shown in Exhibits 53 and 54 to the SAC. *See* D.E. 103-53, 103-54. The fact that these are the final two exhibits to the SAC and their numbering is out of order with their appearance in the SAC is further confirmation that Dr. Melamed accessed and took photographs of these records in a last minute effort to bolster the SAC. *See* D.E. 103, ¶ 235.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

letter regarding Dr. Melamed using the computers and login credentials of unwitting third-parties to access these patients' records. *Id.*, ¶ 16.

## III. **LEGAL STANDARD**

Federal courts have broad discretion to exercise their inherent powers to sanction litigation misconduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). These inherent powers are governed by neither rule nor statute. *Id.* They are, instead, "vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). "A district court may, among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021). A court may impose these sanctions at its discretion if it finds that a litigant engaged in bad faith conduct, "which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

## IV. **ARGUMENT**

### A.    Dr. Melamed's Deceptive and Unlawful Acquisition of Patient Records Constitutes Sanctionable Bad Faith Conduct.

Multiple courts have found bad faith and imposed terminating sanctions against parties who, like Dr. Melamed, engaged in deceptive conduct to improperly gather documents outside of the discovery process. *See Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273 (D. Utah 2016), *aff'd sub nom. Xyngular v. Schenkel*, 890 F.3d 868 (10th Cir. 2018); *Site 2020 Inc. v. Superior Traffic Servs., LLC*, No. CV 21-63-M-DLC, 2023 WL 4248715 (D. Mont. June 29, 2023). The rationale behind imposing these serious sanctions is that:

> Parties anticipating [or participating in] litigation may not engage in self-help by improperly gathering a potential adversary's property. This conduct is an affront to the established rules of engagement and fair play in lawsuits. It

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-9-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

amounts to an end-run around the Federal Rules of Civil Procedure, including the rules governing discovery and the orderly exchange of information relevant to disputes presented for resolution in our courts. This conduct undermines the confidence of both litigants and the public in the fairness of judicial proceedings.

*Xyngular*, 200 F. Supp. 3d at 1317. Moreover, this type of self-help "significantly interfere[s] with the judicial process" by "depriv[ing] the court of the chance to fulfill its fundamental obligation to ensure the integrity of [ ] proceedings." *Id.* at 1322.

      1. <u>Dr. Melamed's deceitful actions are similar to the vigilante discovery sanctioned by other courts.</u>

In *Site 2020 Inc. v. Superior Traffic Servs., LLC*, the district court applied Ninth Circuit precedent on sanctioning bad faith conduct and adopted the magistrate judge's recommendation to impose terminating sanctions against a litigant who engaged in a deceptive scheme to acquire information outside of the discovery process. *Site 2020*, 2023 WL 4248715, at *10. More specifically, the plaintiff in that action surreptitiously acquired confidential information from its litigation opponent by having an employee pose as a potential customer and record a sales pitch and product demonstration. *Id.* at *1-2. The *Site 2020* court condemned this duplicitous conduct and noted several factors that supported a finding of bad faith and the imposition of terminating sanctions:

- The offending party "demonstrated willingness to lie its way to a perceived advantage . . . . " *Id.* at *5.

- The offending party "planned and executed an elaborate artifice to obtain information to which it was not entitled . . . ." *Id.* at *6.

- "[T]hese facts do not illustrate a single incident of poor judgment . . . . Rather, they are akin to [a] pattern of deception and discovery abuse." *Id.* at *5 (internal quotations and citation omitted).

-10-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- "[T]he scheme evolved and occurred while this litigation was ongoing . . . ." *Id.*

- "The information obtained is directly relevant to [the plaintiff's] claims . . . ." *Id.*

These same factors are present with Dr. Melamed's misconduct:

- He demonstrated a willingness to lie by informing Cedars-Sinai's Health Information Department that he accessed Patient JM's records because the patient came to him for a second opinion—*on a surgery that occurred in 2010.*[7]

- After being caught accessing Patient JM's records, he executed a plan to disguise his ongoing snooping in patients' records.[8]

- He engaged in a pattern of deceptive conduct by surreptitiously using the nurses' computers and login credentials, without their knowledge or permission, on at least five different occasions.[9]

- He accessed the 12 other concurrent surgery patients' records between the motion to dismiss hearing on January 24, 2025 and the filing of the SAC on February 21, 2025.

- He attached photographs of the improperly accessed records to the SAC in an attempt to remedy the factual deficiencies that the Court identified in the FAC.

---

[7] Even if Dr. Melamed treated Patient JM at some point in the past, for which no evidence has been provided, it would be inaccurate and misleading to suggest that accessing this patient's records in January 2025 was related to the provision of medical care. Given the timing, the true purpose was clearly to benefit Relator's *qui tam* action.

[8] These efforts to hide his own EMR access by using the nurses' computers belie any argument that Dr. Melamed had a good faith belief that his actions were legitimate. To the contrary, Dr. Melamed must have known that his actions violated Marina del Rey Hospital's Medical Staff Bylaws, Code of Conduct, and Privacy Practices and the terms of his settlement agreement with Cedars-Sinai.

[9] Beyond the fact that his counsel did not deny that this occurred, the evidence leaves no other plausible conclusion.

-11-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1   An additional aggravating factor makes Dr. Melamed's deceptive actions even

2   worse than the discovery abuses in *Site 2020*—Dr. Melamed violated multiple federal

3   and state laws, subjecting Cedars-Sinai to significant fines and penalties.[10]

4           2.      Dr. Melamed's misconduct violated multiple federal and state

5                   laws.

6           Dr. Melamed's misconduct is a clear breach of HIPAA and the CMIA. HIPAA

7   permits a covered entity to use and disclose PHI, with certain limitations and

8   protections, for treatment, payment, and health care operations activities. 42 C.F.R.

9   § 164.502(a). The regulations do not contemplate former hospital staff personnel not

10  involved in patients' medical care to read their medical records for a purpose other than

11  treatment or business operations. In their response to the March 26, 2025 notification

12  letter, Relator's counsel invoked the HIPAA whistleblower exception set out in the

13  HIPAA regulations to excuse their client's wrongdoing. *See* Exhibit 9. This narrow

14  exception states, in relevant part, that a covered entity does not breach HIPAA if PHI

15  is disclosed by a "workforce member or business associate [that] believes in good faith

16  that the covered entity has engaged in conduct that is unlawful . . . ."[11] 45 C.F.R.

17  § 164.502(j)(1).

18          This exception does not cure Dr. Melamed's repeated breaches for two reasons.

19  First, the exception only applies to *disclosure* of PHI. A covered entity breaches

20  HIPAA not just through disclosure of PHI, but also through "the acquisition, access,

21

22  [10] Dr. Melamed's misconduct is also made worse by the fact that he is abusing his
    statutory privilege to bring a *qui tam* action in the name of the United States and the
23  State of California. False Claims Act relators are allowed to share in the government's
    recovery because they are supposed to provide independent, inside knowledge of
24  fraud—not to break laws themselves in furtherance of a personal vendetta. Dr.
    Melamed's continuous snooping in other surgeons' patients' records in an effort to find
25  evidence of regulatory violations—more than four years after the filing of the original
    complaint and after the United States and State of California investigated his
26  allegations for 42 months—shows that he lacked the requisite inside knowledge of
    fraud and instead relied on an unlawful fishing expedition to support his claims.
27  [11] Commentary to the regulation notes that the whistleblower exception "does not,
    however, cover situations involving snooping employees, because access as a result of
28  such snooping would be neither unintentional nor done in good faith." 78 Fed. Reg.
    5566, 5640 (Jan. 25, 2013).

DEFENDANT CEDARS-SINAI'S                    2:20-CV-08439-WLH-PVC
MOTION FOR SANCTIONS

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

[or] use . . . of protected health information in a manner not permitted" by HIPAA. 45 C.F.R. § 164.402. Therefore, even if this exception applied, it would only excuse disclosure of PHI to Relator's counsel, not Dr. Melamed's unauthorized acquisition, access, or use of the PHI. Second, Dr. Melamed is not a "workforce member" or "business associate" of Cedars-Sinai. A workforce member is defined to include "employees, volunteers, trainees, and other persons whose conduct, in the performance of work for a covered entity or business associate, is under the direct control of such covered entity or business associate." 45 C.F.R. § 160.103. A business associate is a person other than a workforce member who receives PHI for purposes of claims processing or administration, quality assurance, accounting, or other services on behalf of the covered entity. *Id.* Dr. Melamed was never an employee, volunteer, or trainee of Cedars-Sinai. His conduct was never under the direct control of Cedars-Sinai because he was an independent contractor who merely used Cedars-Sinai's facilities to perform surgeries. And, after Dr. Melamed was removed from the medical staff at Cedars-Sinai over a decade ago, he no longer had *any* relationship with Cedars-Sinai and did not perform any services on its behalf.

The CMIA is the state law corollary to HIPAA, further protecting the confidentiality of individually identifiable medical information obtained by a health care provider in the State of California. Cal. Civ. Code § 56.10. Similar to HIPAA, the CMIA prohibits a health care provider from disclosing patient medical information without first obtaining an authorization, except as specified by statute. *Id.* § 56.10(a). Violation of the CMIA is punishable by per violation penalties of up to $2,500. *Id.* § 56.36(c)(1). The CMIA does not contain a whistleblower exception, and Relator's counsel did not identify any other exception that would excuse Dr. Melamed's repeated breaches. By violating HIPAA and the CMIA, Dr. Melamed exposed Cedars-Sinai to considerable penalties. Penalties under both statutes are assessed against the healthcare entity, rather than the individual who caused the breach. <u>Exhibit 2</u>, ¶ 9. These penalties

-13-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

could be as high as $250,000 per breach and, based on the penalties imposed from prior breaches, will likely be close to $10,000 per patient ($210,000 in total). *Id.*, ¶ 10.

In addition to HIPAA and CMIA, Dr. Melamed's conduct also likely violated the federal Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act ("CCDAFA"). The CFAA is the primary federal anti-hacking statute, prohibiting "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). The California Legislature enacted CCDAFA to protect against "tampering, interference, damage, and unauthorized access to (including the extraction of data from) lawfully created computer data and computer systems." Cal. Penal Code § 502(a). Liability attaches to a person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, . . . , whether existing or residing internal or external to a computer, computer system, or computer network." *Id.* § 502(c)(2).

Dr. Melamed appears to have violated both statutes by knowingly and without permission using computers logged on with credentials of unwitting third parties to exceed his authorized access to Cedars-Sinai's EMR system and to use the accessed data—confidential medical records—for an unauthorized purpose. *See U.S. v. Nosal*, 844 F.3d 1024, 1038 (9th Cir. 2016) (affirming a conviction under the CFAA where former employees used login credential belonging to current employees to "surreptitiously access[ ] data owned by their former employer"); *Biden v. Ziegler*, 737 F. Supp. 3d 958, 976 (C.D. Cal. 2024) (quoting *U.S. v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015)) ("The term 'access' under the CCDAFA has been defined broadly and 'includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly.'").

In spite of the potential ramifications of violating multiple laws and the repeated warnings from Cedars-Sinai to cease his illegal access of patients' records, Dr.

-14-

Melamed "made a calculated decision to obtain the documents for strategic use in litigation." *Xyngular*, 200 F. Supp. 3d at 1322. Accordingly, his conduct demonstrates bad faith, willfulness, and fault, and sanctions are warranted. *See U.S. v. Kinetic Concepts, Inc.*, No. CV0801885BROAGRX, 2017 WL 8948062, at *5 (C.D. Cal. Aug. 21, 2017) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)) ("All that is required to demonstrate willfulness, bad faith, or fault is misconduct not shown to be outside a party's control.").

**B.    The Court Should Exclude the Illicitly Obtained Evidence, Order Dr. Melamed to Cease His Unlawful Access of Patient Records, and Award Costs and Fees to Cedars-Sinai.**

Although Dr. Melamed's deceptive discovery abuses were similar to—if not worse than—the conduct sanctioned in *Site 2020*, Cedars-Sinai does not seek terminating sanctions because it recognizes that less drastic sanctions are available. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 349 (9th Cir. 1995)) ("Before imposing the 'harsh sanction' of dismissal, however, the district court should consider . . . 'the availability of less drastic sanctions.'"). Cedars-Sinai, instead, seeks an order that (1) strikes the illicitly obtained documents and information from the SAC, (2) requires Dr. Melamed to cease his unlawful access of patient records, and (3) awards compensatory costs and fees.

Excluding evidence in these circumstances falls squarely within Ninth Circuit precedent, which makes it clear that "'[c]ourts need not tolerate flagrant abuses of the discovery process' and have 'inherent power' to exclude evidence as a sanction for such abuses." *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1014 (9th Cir. 2007) (quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). Moreover, striking the wrongfully obtained patient documents and information from the SAC will prevent Dr. Melamed from making the Court complicit in his unlawful efforts to salvage his deficient claims. *See Ashman v. Solectron Corp.*, No. C 08-1430JF(HRL),

-15-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

2008 WL 5071101, at *3 (N.D. Cal. Dec. 1, 2008) (quoting *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997)) ("[A] court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct.").

In addition to excluding the improperly obtained evidence, the Court should also order Dr. Melamed to cease his illegal access of records, so there will be no future breaches of patient privacy or cybersecurity laws and Cedar-Sinai will not suffer additional harm. *See In re Bofl Holding, Inc. Sec. Litig.*, 318 F.R.D. 129, 135-36 (S.D. Cal. 2016) (citing *Wharton v. Calderon*, 127 F.3d 1201, 1205-06 (9th Cir. 1997)) (issuing a pre-discovery protective order pursuant to the court's inherent authority).

Finally, the Court should award Cedars-Sinai its costs and fees associated with this Motion and compensation for the penalties it faces as a result of Dr. Melamed's multiple breaches of HIPAA and the CMIA.[12] *See Site 2020*, 2023 WL 4248715 at *10 (awarding "reasonable attorneys' fees and costs incurred in filing and litigating the motion for sanctions"); *Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139, 1151-52 (C.D. Cal. 2023) (imposing monetary sanctions in response to a "pattern of deception and discovery abuse"); *see also Rousseau*, 985 F.3d at 1089-90 (explaining that compensatory sanctions must be designed to compensate for the specific harm caused by the sanctionable misconduct).

//

//

//

//

---

[12] The full extent of the monetary penalties imposed on Cedars-Sinai for these breaches are not yet established. Cedars-Sinai submitted the requisite breach reports under both statutes and will learn of the monetary penalties imposed following the resulting investigations. *See* <u>Exhibit 2</u>, ¶¶ 8-10.

-16-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

## V.    <u>CONCLUSION</u>

For all the reasons detailed herein, Cedars-Sinai respectfully requests an order that (1) strikes the illicitly obtained documents and information from the Second Amended Complaint, (2) requires Dr. Melamed to cease his unlawful access of patient records, and (3) awards compensatory costs and fees to Cedars-Sinai.

DATED: April 24, 2025

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:  */s/ Eddie A. Jauregui*
Eddie A. Jauregui
Jennifer L. Weaver

Attorneys for Defendant,
Cedars-Sinai Medical Center

-17-

1

# <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Defendant Cedars-Sinai Medical Center,

3

certifies that this brief contains 5,444 words, which complies with the word limit

4

imposed by L.R. 11-6.2.

5

6

DATED:  April 24, 2025                    By:   <u>  /s/ Eddie A. Jauregui</u>
                                                            Eddie A. Jauregui

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

DEFENDANT CEDARS-SINAI'S
MOTION FOR SANCTIONS

2:20-CV-08439-WLH-PVC