UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ET AL<br><br>Plaintiff,<br><br>v.<br><br>CEDARS-SINAI MEDICAL CENTER ET AL<br><br>Defendant. | Case No. 2:20-cv-08439-WLH-PVC<br><br>**ORDER RE MOTION FOR SANCTIONS [115]** |

Before the Court is a Motion for Sanctions filed by Defendant Cedars-Sinai Medical Center ("Cedars-Sinai") against Relator Hooman Melamed and Oak Bull, LLC ("Relator"). (Motion for Sanctions ("Mot."), Docket No. 115). Cedars-Sinai moves for sanctions under the Court's inherent authority based on allegations that Dr. Melamed unlawfully accessed confidential patient medical records and used those records to support the Second Amended Complaint. Defendants Drs. Bae, Rasouli, Delamarter, Cuéllar, and Lanman filed a notice of joinder in the motion. (Docket No. 116). Relator filed an opposition on May 16, 2025. (Docket No. 120). On June 2, 2025, Relator filed a request for leave to file a sur-reply. (Docket No. 127). Cedars-Sinai filed an opposition to the request on June 3, 2025. (Docket No. 128). The Court granted

Relator's request on June 5, 2025, and the sur-reply attached as Exhibits 1 and 2 to the declaration of Grace Y. Park is accordingly part of the record before the Court on this Motion. (Docket No. 129). The court heard oral argument on June 6, 2025. For the reasons explained below, the Motion for Sanctions is **GRANTED**.

## I. BACKGROUND

This is a qui tam action brought under the False Claims Act and California False Claims Act by Relator Oak Bull, LLC, alleging that Cedars-Sinai Medical Center ("Cedars-Sinai") and several affiliated physicians submitted fraudulent claims related to concurrent surgeries and artificial disc replacement ("ADR") procedures. (Second Am. Compl., Dkt. 103). In support of the operative complaint, Relator attached over twenty patient medical records obtained from Cedars-Sinai's electronic systems. (*See* Mot. at 1–2).

On April 24, 2025, Cedars-Sinai filed a Motion for Sanctions alleging that Dr. Hooman Melamed—the principal of Oak Bull—improperly accessed the confidential medical records of at least twenty-one patients without authorization. (Mot. at 2–6). According to Cedars-Sinai, Dr. Melamed accessed twelve of those records using login credentials assigned to nurses during surgical procedures. (*Id*. at 6–8; Ex. 7, Audit Reports). Another record—pertaining to Patient JM—was accessed by Dr. Melamed using his own login credentials in March 2024. (*Id*. at 4–5; Ex. 8).

Cedars-Sinai contends that Dr. Melamed's conduct violated a prior settlement agreement in which he expressly agreed not to access records of patients not under his care. (*Id*.; Ex. 5, Settlement Agreement). Cedars-Sinai also notes that Melamed failed to delete the improperly accessed records, despite prior assurances from his counsel. (Mot. at 6; Ex. 4, Weaver Decl.).

Defendants Drs. Bae, Rasouli, Delamarter, Cuéllar, and Lanman joined in Cedars-Sinai's motion on April 30, 2025. (Joinder, Dkt. 116). Relator filed an

2

opposition on May 16, 2025. (Opp'n, Dkt. 120). Relator's request for leave to file a sur-reply followed on June 2, 2025. (Request to File Sur-Reply, Dkt. 127).

## II. DISCUSSION

The motion presents three issues for resolution: (1) whether Dr. Hooman Melamed, through Oak Bull, LLC, engaged in litigation misconduct by improperly accessing and using confidential patient medical records; (2) whether sanctions are warranted under the Court's inherent authority based on that misconduct; (3) what form of sanctions, if any, are appropriate—including striking documents from the Second Amended Complaint, prohibiting future access to records, evidentiary or terminating sanctions; and (4) whether Defendants are entitled to recover the attorneys' fees and costs incurred in bringing the motion.

### A. Legal Standard

Federal courts possess inherent authority to sanction litigation misconduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). These inherent powers are not governed by rule or statute but are "vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). Courts may exercise this authority to impose sanctions "for a full range of litigation abuses," *Chambers*, 501 U.S. at 46, including fee-based sanctions where a party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," or has delayed or disrupted litigation or taken actions for an improper purpose. *Id.* at 45–46 & n.10.

As the Ninth Circuit explained in *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001), this power encompasses "a broad range of willful improper conduct." *Id.* at 992. The Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), emphasized that inherent power sanctions are appropriate for "willful disobedience of a court order" or where "the losing party has acted in bad faith, vexatiously, wantonly, or for

3

oppressive reasons." *Id.* at 766. These include instances where a party has willfully abused the judicial process. *Id.*

Importantly, *bad faith* in this context includes not only acts that are frivolous or in violation of a court order but also "actions that are substantially motivated by vindictiveness, obduracy, or mala fides." *Fink*, 239 F.3d at 992 (quoting *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986)). Thus, a party may act in bad faith even when pursuing a colorable legal position, if the litigation conduct is driven by an improper purpose — for example, to gain an unfair tactical advantage. *Id.* (citing *Itel*, 791 F.2d at 675). *See also Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) ("[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.").

Conversely, mere negligence, inadvertence, ignorance, or mistake does not constitute bad faith. *Zambrano v. City of Tustin*, 885 F.2d 1473, 1485 (9th Cir. 1989); *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986); *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993)). Even recklessness, by itself, is insufficient; there must be something more — an improper purpose or intent — for inherent power sanctions to be justified. *In re Keegan Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir. 1996). In sum, the ultimate inquiry is whether the party's conduct represents a willful abuse of the judicial process undertaken for an improper purpose.

### B. Litigation Misconduct

*1. Dr. Melamed's Conduct Reflects Deceptive, Self-Help Discovery*

Courts have long recognized that "self-help" discovery, where a party circumvents formal discovery procedures to obtain and use evidence, is sanctionable under the Court's inherent authority. *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1316–17 (D. Utah 2016), aff'd sub nom. *Xyngular v. Schenkel*, 890 F.3d 868 (10th Cir. 2018); *Site 2020 Inc. v. Superior Traffic Servs., LLC*, No. CV 21-63-M-DLC, 2023 WL

4248715, at *10 (D. Mont. June 29, 2023); *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1014 (9th Cir. 2007).

In *Site 2020*, for example, the court imposed terminating sanctions where a party engaged in a pattern of deceptive conduct to acquire evidence through an elaborate artifice while litigation was pending. *Site 2020*, 2023 WL 4248715, at *5–6, 10*. Courts applying Ninth Circuit authority have similarly emphasized that willful circumvention of proper discovery channels, particularly where done for tactical advantage, constitutes bad faith and warrants sanctions. *Merrick*, 500 F.3d at 1014.

Here, the Court finds that the evidentiary record demonstrates a comparable pattern of self-help discovery by Dr. Melamed. Cedars-Sinai's audit reports reflect that Dr. Melamed accessed at least twelve patient records using the login credentials of operating room nurses during surgeries performed at Cedars-Sinai Marina Del Rey Hospital. (Mot. at 6–8; Ex. 7). The timing of these accesses, during surgical procedures when nurses were logged into mobile workstations, suggests an intentional effort to bypass system controls and avoid detection. (*Id*.). Cedars-Sinai also submits the declaration from one of the relevant nurses, who denies accessing the records in question. (Mot., Ex. 6, Manalastas Decl.).

In addition, the record shows that Dr. Melamed accessed the medical record of Patient JM on January 26, 2025, two days after the hearing on Defendants' motions to dismiss the First Amended Complaint, using his own login credentials. (Mot. at 4–5; Ex. 8). Dr. Melamed's stated justification for this access is that Patient JM requested a second opinion. (Opp'n at 11–12; Patient JM Decl.). While this explanation may mitigate the gravity of this particular instance, there is no contemporaneous documentation corroborating that request, and the timing of the access—after the Court identified deficiencies in the prior complaint—raises concerns about improper motivation.

Relator also argues that Cedars-Sinai lacked a clear policy prohibiting the use of unlocked terminals by physicians and that Dr. Melamed acted to expose fraud and dangerous surgical practices. (Opp'n at 9–11, 17–19). The Court has considered these arguments but finds them unpersuasive. Even assuming Cedars-Sinai's written policies were ambiguous, the pattern of conduct, repeated access of medical records, which are by their nature sensitive, using other users' credentials, during surgeries and during a critical period of litigation, reflects more than inadvertence or negligence. *Fink*, 239 F.3d at 993.

Applying the governing standard to all of the facts presented, the Court finds that Dr. Melamed's conduct was undertaken in bad faith. *See Fink*, 239 F.3d at 992 (bad faith includes conduct "substantially motivated by vindictiveness, obduracy, or mala fides," or undertaken for an improper purpose). The pattern of surreptitious access—shortly after the hearing on the motion to dismiss, followed by the incorporation of information from these records into the Second Amended Complaint—constitutes a willful abuse of the judicial process. Dr. Melamed acted with an improper purpose in acquiring and using the patient records outside of proper discovery channels. The Court concludes that this conduct warrants sanctions under its inherent authority.

Relator argues that his conduct was permissible under HIPAA and California privacy law. The Court addresses those contentions below.

### 2. Privacy Laws and the Whistleblower Exception

HIPAA prohibits unauthorized access, use, or disclosure of protected health information (PHI) by covered entities and their workforce members. 45 C.F.R. §§ 164.502(a), 164.402. A narrow whistleblower exception allows disclosure, but not access or use, of PHI by workforce members who, in good faith, believe the covered entity engaged in unlawful conduct. *Id.* § 164.502(j)(1). To qualify, the individual must be under the covered entity's "direct control." 45 C.F.R. § 160.103.

California's Confidentiality of Medical Information Act (CMIA) similarly bars unauthorized access and disclosure. Cal. Civ. Code § 56.10(a). It contains no whistleblower exception but allows disclosure "otherwise specifically authorized by law." *Id*. § 56.10(c)(14).

Relator argues his conduct is protected under HIPAA's whistleblower provision, citing his role as an independent contractor at Cedars-MDR, a Cedars-Sinai subsidiary, and claiming he disclosed only redacted records to counsel. (Opp'n at 13–14). The Court disagrees with Relator's contentions.

First, the HIPAA exception does not cover Dr. Melamed's unauthorized access or use of PHI in litigation. 45 C.F.R. § 164.402. Second, Relator was not a "workforce member" under HIPAA. He had not worked for Cedars-Sinai in over a decade, and his independent contractor status at Cedars-MDR, along with Cedars-Sinai's limited monitoring rights under a settlement agreement, does not establish "direct control." 45 C.F.R. § 160.103.

As to CMIA, Relator relies on § 56.10(c)(14)'s catchall for disclosures authorized by law, invoking public interest in exposing fraud and unsafe practices. (Opp'n at 15). But courts interpret this exception narrowly. *McNair v. City & Cnty. of San Francisco*, 5 Cal. App. 5th 1154, 1167 (2016) (upholding a physician's disclosure under this provision where a state statute expressly encouraged reporting of certain medical conditions to public safety authorities). Here, Dr. Melamed was not acting as a treating physician, did not report any concerns to a governmental or oversight agency and has not identified any statute that specifically authorized his repeated access to patient records outside formal discovery. Accordingly, the Court finds that Relator's conduct violated both HIPAA and the CMIA, further supporting the imposition of sanctions.

### C. Appropriate Sanctions

> *1. Striking the Improperly Obtained Records from the Second Amended Complaint*

Courts have inherent power to exclude evidence as a sanction for litigation misconduct. "[C]ourts need not tolerate flagrant abuses of the discovery process" and have "inherent power" to exclude evidence as a sanction for such abuses. *Merrick*, 500 F.3d at 1014 (quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). Exclusion is warranted to preserve the integrity of judicial proceedings and to ensure that parties do not benefit from improper conduct in gathering evidence. *Id.*; *Ashman v. Solectron Corp.*, No. C 08-1430-JF(HRL), 2008 WL 5071101, at *3 (N.D. Cal. Dec. 1, 2008) (a court must be able to sanction a party that seeks to introduce improperly obtained evidence to avoid becoming complicit in the misconduct).

Defendants request that the Court strike the improperly obtained documents and information from the Second Amended Complaint. (Mot. at 23). They argue that Dr. Melamed's unauthorized access and use of these records to support the SAC constitutes bad faith warranting exclusion of this evidence. Relator responds that the SAC contains redacted records and that public policy supports allowing the evidence to remain, given its relevance to alleged misconduct. (Opp'n at 10–11, 17–19).

The governing case law makes clear that the Court is not required to tolerate the use of evidence obtained through litigation misconduct, even where that evidence may be probative or relevant. *Merrick*, 500 F.3d at 1014; *Ashman*, 2008 WL 5071101, at *3. Here, the Court has found that Dr. Melamed engaged in bad faith, self-help discovery, including a pattern of surreptitious access to patient records timed around the filing of the SAC. Defendants have identified specific exhibits in the SAC that are drawn from the improperly accessed records. (Mot. at 11).

The Court finds that exclusion of the improperly obtained records from the Second Amended Complaint is an appropriate and necessary remedy. Striking this material preserves the integrity of the litigation process and ensures that Relator does not benefit from the use of confidential patient information acquired through bad faith conduct.

*2. Injunctive Relief Prohibiting Further Unauthorized Access*

Courts have inherent authority to issue orders necessary to prevent ongoing or future abuses of the litigation process and to protect the integrity of court proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). This includes protective orders and injunctive relief to prevent future improper conduct. *See In re BofI Holding, Inc. Sec. Litig.*, 318 F.R.D. 129, 135–36 (S.D. Cal. 2016) (granting pre-discovery protective order pursuant to court's inherent authority).

Defendants request an injunction prohibiting Dr. Melamed from any further unauthorized access of Cedars-Sinai's patient records. (Mot. at 16). They argue that such relief is necessary to prevent future breaches of patient privacy or cybersecurity laws and to avoid additional harm to Cedars-Sinai. (*Id.*).

The Court agrees that injunctive relief is warranted. As explained above, Dr. Melamed engaged in a pattern of unauthorized access to patient records outside of proper discovery channels, including during surgeries and after prior warnings. This conduct reflects a disregard for appropriate legal boundaries and poses a continuing risk of harm to Cedars-Sinai and its patients. An order prohibiting further unauthorized access is therefore justified to prevent recurrence of this misconduct.

*3. Compensatory Costs and Fees*

Courts may impose monetary sanctions to compensate for harm caused by litigation misconduct, including attorneys' fees and other expenses directly tied to the sanctionable conduct. *Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139, 1151 52 (C.D. Cal. 2023).

Defendants seek recovery of the attorneys' fees and costs associated with this motion, as well as compensation for the exposure to regulatory penalties stemming from Dr. Melamed's unauthorized access to protected health information. (Mot. at 16). The Court finds that Cedars-Sinai has incurred fees and costs in responding to the misconduct in the present motion, and that Dr. Melamed's actions have exposed Cedars-

Sinai to a risk of regulatory penalties under HIPAA and the CMIA. Accordingly, compensatory monetary sanctions are warranted.

## III.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Cedars-Sinai Medical Center's Motion for Sanctions as follows: (1) Defendants' request to strike the illicitly obtained documents and information from the Second Amended Complaint is **GRANTED**; (2) Defendants' request to require Dr. Melamed to cease his unlawful access of patient records is **GRANTED**; and (3) Defendants' request for compensatory costs and fees is **GRANTED**. Defendants shall file a declaration within 14 days of the date of this Order identifying the fees and costs they seek, and Relator may file objections within 14 days thereafter.

**IT IS SO ORDERED.**

Dated: September 8, 2025

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE