UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ET AL<br><br>Plaintiff,<br><br>v.<br><br>CEDARS-SINAI MEDICAL CENTER ET AL<br><br>Defendant. | Case No. 2:20-cv-08439-WLH-PVC<br><br>**ORDER RE MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT [111, 112, 113]** |

Before the Court are three motions to dismiss Relator Oak Bull, LLC's Second Amended Complaint ("SAC"): (1) Defendant Cedars-Sinai Medical Center's Motion to Dismiss ("Cedars Motion") (Dkt. 111); (2) Defendants Hyun Bae, M.D., Rick Delamarter, M.D., and Alexandre Rasouli, M.D.'s Motion to Dismiss ("Delamarter Motion") (Dkt. 112); and (3) Defendants Todd H. Lanman, M.D., and Jason M. Cuellar, M.D.'s Motion to Dismiss ("Lanman Motion") (Dkt. 113). Relator filed oppositions on May 2, 2025 (Dkts. 117, 118, 119), and Defendants filed replies on May 23, 2025 (Dkts. 121, 123, 124). The Court heard oral argument on June 6, 2025. For the reasons set forth below, the Court **GRANTS** the motions to dismiss (Dkts. 111, 112, 113), with certain dismissals without prejudice as specified below.

I.  BACKGROUND

A.  **Factual Background**

This action arises under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33, and the California Insurance Frauds Prevention Act ("IFPA"), Cal. Ins. Code § 1871.7.  Relator, a New Mexico limited liability company, brings this action on behalf of the United States and the State of California against Cedars-Sinai and multiple physician defendants.  (Second Amended Complaint ("SAC") ¶¶ 11–20, Dkt. 103).  Relator is owned and controlled by Dr. Hooman Melamed, a former Cedars-Sinai attending physician who alleges that Defendants engaged in widespread fraudulent billing practices.  (*Id*. ¶¶ 11, 91).

Relator alleges that Cedars-Sinai submitted or caused the submission of false claims under two overarching theories of liability.  First, Relator claims that Defendants Rick Delamarter, M.D., Hyun Bae, M.D., and Alexandre Rasouli, M.D. performed concurrent surgeries in violation of Medicare regulations and without obtaining adequate informed consent.  (*Id*. ¶¶ 3, 117–240).  According to the SAC, patients were not advised that their attending surgeon would be absent during "critical portions" of their procedures, and operative reports failed to reflect overlapping scheduling and improper supervision of "fellows" or "trainees."  (*Id*. ¶¶ 70–72, 157, 159, 270).  Relator further alleges that Cedars-Sinai failed to comply with 42 C.F.R. §§ 415.152 and 415.172(b), which govern teaching physician presence and documentation requirements.  (*Id*. ¶¶ 31–34, 109, 270).

Second, Relator alleges that Cedars-Sinai submitted false claims for medically unnecessary artificial disc replacement ("ADR") surgeries performed by Defendants Todd H. Lanman, M.D., Jason M. Cuellar, M.D., and Michael Kropf, M.D. (*Id*. ¶¶ 289-304).  The SAC identifies Patient TF—a Medicare beneficiary—as having undergone a procedure allegedly misrepresented in operative reports and improperly billed to a federal healthcare program.  (*Id*. ¶¶ 400–409).

In total, the SAC asserts five causes of action: (1) presentment of false claims under the FCA, 31 U.S.C. § 3729(a)(1)(A); (2) use of false records or statements, § 3729(a)(1)(B); (3) conspiracy to violate the FCA, § 3729(a)(1)(C); (4) reverse FCA liability, § 3729(a)(1)(G); and (5) violations of the IFPA, California Penal Code § 550 and Cal. Ins. Code § 1871.7.  (*Id*. ¶¶ 425–55).

**B. Procedural Background**

Relator filed the initial Complaint under seal on September 9, 2020.  (Dkt. 1).  On July 31, 2023, after 42 months of investigation, both the United States and the State of California declined to intervene.  (Dkts. 36, 38).  The Court unsealed the case shortly thereafter.  (Dkt. 39).

On August 30, 2024, Relator filed a First Amended Complaint ("FAC"), asserting the same five causes of action.  (FAC, Dkt. 72).  Cedars-Sinai and other defendants moved to dismiss.  (Dkts. 82–84, 87).  Following a hearing on January 24, 2025, the Court granted the motions and dismissed the FAC without prejudice, identifying several pleading deficiencies under Rule 9(b).  (Dkt. 101).

Defendant Cedars-Sinai Medical Center filed a Motion for Sanctions, seeking to strike documents unlawfully obtained from patient medical records, to enjoin further unauthorized access, and to recover costs and fees.  (Dkt. 115).  On April 30, 2025, Defendants Bae, Rasouli, Delamarter, Cuéllar, and Lanman filed a Notice of Joinder in Cedars-Sinai's Motion for Sanctions.  (Dkt. 116).  On September 8, 2025, the Court granted Cedars-Sinai's sanctions motion. (Dkt. 145).

Relator filed the operative Second Amended Complaint on February 21, 2025.  (SAC, Dkt. 103).  On June 6, 2025, the Court held oral argument and took the matter under submission.

**II.   LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two

3

1 | reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a
2 | cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);
3 | *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

In deciding a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gomper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). Plaintiffs typically need only provide sufficient factual material to "plausibly" state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

When a plaintiff alleges claims that "sound in" or are "grounded in fraud," however, Rule 9(b) imposes a heighted pleading standard. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102–06 (9th Cir. 2003); *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F. Supp. 2d 1214, 1219–20 (E.D. Cal. 2005). Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P 9(b), including the "who, what, when, where, and how" of the fraudulent activity. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1055 (9th Cir. 2011). Because the federal False Claims Act and California's Insurance Fraud Prevention Act are anti-fraud statutes, complaints brought under the statutes must meet the Rule 9(b) pleading standard. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

**III.   DISCUSSION**

Defendants move to dismiss all five causes of action in the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Specifically, defendants argue that: (1) the informed consent theory fails because the SAC does not identify any violation of binding regulatory requirements; (2) the

4

concurrent surgery theory fails because Relator does not adequately plead the participation of residents or a lack of attending physician supervision during critical portions of surgery; (3) the ADR theory fails because Relator does not allege that Cedars-Sinai submitted materially false claims to government or private payers; (4) the FCA conspiracy claim fails because the SAC does not allege an agreement between Cedars-Sinai and third parties to violate the FCA; (5) the reverse FCA claim is redundant of the direct claims and fails to state an independent theory of liability; and (6) certain claims are barred by the applicable statutes of limitations under both the FCA and IFPA.  The Court addresses each argument in turn.

### A. Informed Consent Theory

To state a claim under the False Claims Act ("FCA"), a relator must plausibly allege that a submitted claim was either factually or legally false.  *U.S. ex rel. Pasqua v. Kan-Di-Ki LLC*, No. 10-CV-0965, 2012 WL 12895229, at *8 (C.D. Cal. June 18, 2012).  Legal falsity under the FCA requires that a defendant falsely certifies compliance with a statutory, regulatory, or contractual requirement that is material and expressly tied to payment.  *U.S. ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1018 (9th Cir. 2018).

The Second Amended Complaint ("SAC") alleges that Cedars-Sinai submitted claims to Medicare despite noncompliance with Medicare's Conditions of Participation concerning informed consent.  Specifically, Relator alleges that patients undergoing spine surgery were not told that their named attending surgeons would be absent during substantial portions of their procedures and that residents would instead perform critical tasks.  (SAC ¶¶ 152–53, 170, 183, 199–203, 220, 234, 244, 257–58, 263–270).  Relator points to 42 C.F.R. § 482.13(b)(2), which states that "[t]he patient has the right to make informed decisions regarding his or her care," including the right "to be informed of his or her health status [and] to be involved in care planning and treatment."  (*Id.*; Opp'n at 6).

1    The SAC further cites CMS's 2007 Interpretive Guidelines for Informed
2    Consent, which describe elements of a "well designed consent process." These
3    include, for example, whether physicians other than the named attending—such as
4    residents—will perform significant surgical tasks, and whether the attending surgeon
5    will be present. (SAC at 14). The guidelines are clear that these elements are merely
6    encouraged "in accordance with the hospital's policies," and are not mandated as
7    conditions of payment. (*Id.*); *see also* Delamarter Mot. at 11 (arguing FCA liability
8    cannot be premised on importing extra-regulatory disclosure duties into § 482.13)
9    (citing *U.S. ex rel. Stebbins v. Vascular Access Ctrs.*, LLC, 2024 WL 3069902, at *7
10   (W.D. Pa. June 20, 2024) ("adequacy of the informed consent obtained by [the
11   surgeons] are claims more akin to a medical malpractice action and not an FCA
12   action.").

13   Allegations premised on the interpretive guidelines do not support an FCA
14   claim. As the Ninth Circuit has emphasized, a theory of legal falsity must rest on
15   noncompliance with a binding requirement—not with aspirational best practices.
16   *Rose*, 909 F.3d at 1018. Here, the SAC does not allege that Cedars-Sinai failed to
17   meet the mandatory elements of informed consent under § 482.13(b)(2), such as
18   identifying the responsible practitioner, describing the procedure, explaining its risks
19   and benefits and obtaining the patient's signature. (SAC ¶ 70).

20   While the SAC alleges that patients were not told whether the attending surgeon
21   would be present at all times or whether residents would be participating, these details
22   are not required under 42 C.F.R. § 482.13(b)(2). That provision guarantees patients
23   the right to "make informed decisions regarding [their] care," including being
24   informed of their health status and involved in care planning and treatment. 42 C.F.R.
25   § 482.13(b)(2). It does not mandate disclosure of the attending surgeon's continuous
26   presence or identification of every participating physician. While the CMS 2007
27   Interpretive Guidelines for Informed Consent recommend that hospitals consider
28   including such disclosures "in accordance with the hospital's policies," they expressly

1 state that these practices "are not necessarily required." (CMS Interpretive
2 Guidelines, Dkt. 87-3 at 3, 11) (a well-designed informed consent form "might also
3 include . . . [a] [s]tatement, if applicable, that physicians other than the operating
4 practitioner, including but not limited to residents, will be performing important tasks
5 related to the surgery . . . ."). Hospitals remain in compliance with § 482.13 so long
6 as they ensure that patients have the information necessary to make informed
7 decisions about their care. Cedars-Sinai's consent process, as described in the SAC,
8 met that standard.

9       The SAC includes a detailed example involving "Patient JM," who allegedly
10 believed that Dr. Delamarter would perform the entire surgery but was unaware that
11 residents would handle key portions of the procedure. (*Id.* ¶¶ 185–89, 199–200).
12 According to the SAC, Delamarter was present in the operating room for only 14
13 minutes. (*Id.* ¶ 189). While these allegations may implicate ethical concerns about
14 surgical practices and transparency, they do not establish a violation of any binding
15 Medicare regulation that would render Cedars-Sinai's claims for reimbursement
16 legally false under the FCA.

17       Additionally, Delamarter, Bae and Rasouli separately contend § 482.13 places
18 the disclosure obligation on the *hospital*, not individual surgeons, and Relator pleads
19 no surgeon-specific violation of a regulation directed to hospitals. 42 C.F.R.
20 § 482.13(a)(1); (Delamarter Mot. at 11-12) ( "The CMS regulation places the burden
21 squarely on the 'hospital [to] inform each patient' of the patient's rights in advance of
22 furnishing care, not the individual surgeons."). The Court agrees. Title 42, Code of
23 Federal Regulations, Section 482.13 places the notice-of-rights and informed consent
24 obligation on the hospital. This appears in the Hospital Conditions of Participation
25 and provides that a hospital must inform each patient of their rights and is responsible
26 for "[p]roperly executed informed consent forms for the operation." 42 C.F.R. §
27 482.13; 482.51(b)(2). The SAC pleads no surgeon-specific duty under that regulation;
28

7

the informed-consent theory therefore fails as to the individual surgeons on this independent ground.

Accordingly, the Court **DISMISSES** the SAC's "informed consent" theory as to all defendants. Because the informed consent theory rests on nonbinding interpretive guidance and fails to identify a regulatory or contractual provision that makes the alleged omissions material to payment, it fails as a matter of law. As the Court has already dismissed the First Amended Complaint on this basis, the Court concludes further amendment would be futile. This theory is therefore **DISMISSED** with prejudice.

### B. Concurrent Surgery Theory

To state a claim under this theory, Relator must plausibly allege that (1) a resident participated in the procedure and was left unsupervised during its critical portion, or (2) the attending physician failed to comply with Medicare's documentation requirements for procedures involving a resident. 42 C.F.R. §§ 415.170, 415.172.

Relator alleges Cedars-Sinai submitted claims for surgeries performed without the required physician supervision or documentation. Cedars-Sinai argues the SAC fails to (1) allege the presence of "residents" as defined in the regulations, (2) show that any resident was unsupervised during the critical portion of surgery, or (3) plead a documentation violation. Each is addressed below.[1]

*1. Resident Participation*

Cedars-Sinai argues the SAC fails to allege the presence of "residents" within the meaning of 42 C.F.R. § 415.152, asserting that the physicians named, Drs. Day,

---

[1] Cedars-Sinai's sanctions motion (Dkt. 115 at 5) identifies 13 concurrent-surgery exhibits as tainted: JO (Ex. 28), HR (Ex. 29), DMD (Ex. 30), MT (Ex. 31), KH (Ex. 34), EL (Ex. 35), LC (Ex. 36), LM (Ex. 37), JM (Ex. 39), SP (Ex. 40), SK (Ex. 41), MF (Ex. 53), and BT (Ex. 54). The Court has granted the sanctions motion. References to these exhibits in the SAC below are offered only to show that, even if considered, the SAC's own allegations would not satisfy § 415.152.

8

1  Mok, Sardar, and Ross, were fellows in an unaccredited program that did not receive
2  GME payments.  (Cedars Mot. at 5–7); *see also* (Delamarter Mot. at 5–7) (arguing the
3  identified physicians were fellows in a non-approved spine fellowship and thus not
4  "residents" under § 415.152 absent allegations of an approved GME program or
5  hospital restricted status).  It contends that the complaint must specifically allege that
6  residents performed the procedures and that the billing physicians were physically
7  absent during the key portions.  (*Id*. at 7).

   The term "resident" is defined in § 415.152 to include both:  (1) individuals
who participate in an approved graduate medical education (GME) program, and
(2) physicians who are not in an approved GME program but are authorized to
practice only in a hospital setting, such as those with restricted licenses or unlicensed
foreign medical graduates.  The regulation further provides that "For purposes of this
subpart, the term *resident* is synonymous with the terms *intern* and *fellow*."  42 C.F.R.
§ 415.152.  This language does not create a separate category based solely on title.
Rather, it confirms that if an individual referred to as a "fellow" satisfies either prong
of the resident definition, by participating in an approved GME program or being
restricted to hospital practice, they are treated as a "resident" for billing and
supervision purposes under the subpart.

   Here, the SAC's allegations fail to meet the definition of "resident."  It pleads
ACGME-accredited Orthopedics and Neurosurgery residency programs and,
separately, a one-year Spine Surgery Fellowship directed by Dr. Bae (SAC ¶¶ 117–
19), but nowhere alleges that the spine fellowship is an approved GME program
within the CMS framework or that the named fellows were authorized to practice only
in a hospital (e.g., on a restricted or temporary license)—the two independent routes to
"resident" status for teaching-physician purposes.  42 C.F.R. § 415.152 (defining
"resident," including "intern" and "fellow," and tying "approved GME program" to
§ 413.75(b)).  And while the SAC labels Drs. Mok and Sardar as "trainees" in Cedars-
Sinai's Graduate Medical Education program during specific procedures (SAC ¶¶ 206,

9

1  223, 236), it pleads no facts that would place those roles within an approved program
2  or establish hospital restricted licensure.  On this record, Relator has not plausibly
3  alleged "resident" participation as required by § 415.152.

### 2. *Absence During Critical Portion*

To state this element with particularity, Relator must allege facts showing that a resident (as defined by § 415.152) performed during the critical portion of a specific procedure and that the billing teaching physician was physically absent then and not immediately available.  42 C.F.R. § 415.172.  The SAC does not do so.  It largely relies on Relator's conclusory assertions about when the "critical" phase occurred, without tethering those assertions to procedure-specific steps and timestamps or negating supervision by any qualified teaching physician.  For example, the JM allegations cite a "14-minute presence" but do not identify which surgical steps comprised the critical portion or why those steps did not occur during that interval. (SAC ¶¶ 185–93).  The November 6, 2019, example points to missing time-in/time-out entries rather than facts establishing that the billing surgeon missed the critical portion.  (*Id*. ¶¶ 154–70).  The SK example asserts a 15-minute interval but does not plead that the interval did not overlap the critical portion or that no teaching physician was present or immediately available.  (*Id*. ¶¶ 221–34).  And as to SP, the SAC alleges that no other qualified orthopedic surgeon was present during the posterior portion and that Delamarter was absent for key intervals (SAC ¶¶205–17), but it does not tether those assertions to procedure-specific steps and timestamps showing that the critical portion occurred outside any supervising physician's presence.  (SAC ¶¶ 204–20; Hr'g Tr. 11:7–12:20).

The SAC does not meet the regulatory standard by alleging absence during a "key or critical portion of the procedure."  42 C.F.R. § 415.172.  On this record, even assuming arguendo that "resident" status was adequately alleged, which as the Court has found above has not been, the absence during the critical portion component is not pleaded with the particularity Rule 9(b) requires.  The concurrent-surgery theory is

10

therefore dismissed without prejudice as to all defendants. Any amendment must identify the specific critical steps and timestamps, plead the billing teaching physician's absence at that time and lack of immediate availability, and negate supervision by any qualified teaching physician—without reliance on stricken materials.

*3. Documentation Violations*

Section 415.172(b) requires documentation of the teaching physician's presence only when a resident participates in the service; it also ties payment to the teaching physician's presence during the critical portion(s) and immediate availability for the entire service. 42 C.F.R. § 415.172. Because, as explained above, the SAC does not plausibly allege "resident" participation as defined in § 415.152 (approved GME program or hospital-only/restricted authorization), the documentation theory fails at the threshold.

**C. ADR Theory**

*1. FCA Claim*

To state a direct FCA claim, a relator must allege "(1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). FCA claims are subject to Rule 9(b)'s heightened pleading standard. *Bly-Magee*, 236 F.3d at 1018. That standard may be relaxed where the details of claim submission are in the defendant's exclusive control. *United States ex rel. Vatan v. QTC Med. Servs.*, Inc., 721 F. App'x 662, 663–64 (9th Cir. 2018).

Relator has pled a claim under the FCA based on the ADR theory. The SAC alleges that Patient TF was a 77-year-old Medicare beneficiary with supplemental Blue Cross coverage. (SAC ¶ 401). The SAC further alleges that CMS does not reimburse lumbar ADR procedures for patients over age 60, and that Anthem Blue Cross—the patient's Medicare supplemental insurer—also prohibits such procedures.

(*Id*. ¶¶ 402, 409). According to the SAC, operative reports from August 27 and 29, 2019, omitted the ADR procedure despite post-operative imaging confirming it had been performed. (*Id*. ¶¶ 403–406). The SAC alleges that Cedars-Sinai and Dr. Kropf submitted claims using the falsified records in order to obtain reimbursement. (*Id*. ¶ 407).

While the SAC describes conduct that may violate Medicare guidance, it does not clearly allege that a materially false claim was submitted to CMS. The SAC references "Medicare and private insurer guidelines" (*Id*. ¶ 409) and states that the patient had "Medicare Supplemental insurance provided by Anthem BlueCross" (*Id*. ¶ 401). The only reference to claim submission appears in paragraph 407 of the SAC, which alleges that Cedars-Sinai and Dr. Kropf submitted "fraudulent claims using the … falsified operative reports," but does not specify whether those claims were submitted to CMS or a private insurer, or whether CMS paid any portion of the claim. The same ambiguity was present in the prior complaint and was a basis for dismissal. (Cedars Mot., Ex. 1, Hearing Tr. at 7:9–13) ("[T]here is no specific instance in which a falsified operative report was alleged to have been submitted to CMS for reimbursement, let alone an instance in which CMS paid Defendants for the allegedly false ADR claim.").

Absent a specific allegation that a materially false claim was submitted to a federal payer, the SAC does not state a viable FCA claim. This theory is therefore dismissed with prejudice as the Court concludes from Plaintiff's failure to cure this defect as a concession that it cannot be cured.

### 2. IFPA Claim

The IFPA authorizes civil penalties for violations of California Penal Code § 550. Cal. Ins. Code § 1871.7. It is unlawful to "knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim" or to "knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit." Cal.

Penal Code § 550(a)(5), (6).  A violation requires an intent to defraud.  *In re Thompson*, 2009 WL 7751417, at *5 (B.A.P. 9th Cir. Sept. 4, 2009), aff'd, 418 F. App'x 643 (9th Cir. 2011).  As a claim for fraud, an IFPA cause of action must also satisfy the heightened pleading standard under Rule 9(b).

Here, the SAC alleges that Cedars-Sinai and individual physicians falsified operative reports to conceal non-covered ADR procedures—such as multi-level ADR or ADR/fusion hybrids—and submitted those reports to private insurers to secure reimbursement.  (SAC ¶¶ 410–418).  The SAC attaches 15 policy documents and guidelines from various private payers and CMS that, according to Relator, uniformly limit ADR coverage to one level and prohibit fusion combinations.  (SAC ¶¶ 71–90 & Exs. 1–15).

Defendants Cuellar and Lanman underscore that Relator pleads no actual policy terms and relies instead on nonbinding guidelines that themselves direct readers to consult the insured's plan documents.  (Lanman Mot. at 10–11).  While these exhibits may suggest general industry consensus or insurer practice, the SAC does not allege that any of the exemplar patients' actual insurance policies adopted these restrictions.  As courts have recognized, the existence of a general guideline or coverage summary does not, without more, establish a specific policy exclusion or fraudulent claim.  *California ex rel. Campfield v. Safelite Grp., Inc.*, No. A168101, 2024 WL 1339183, at *5–6 (Cal. Ct. App. Mar. 29, 2024); *People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.*, 94 Cal. App. 5th 521, 548–49 (2023), review denied (Nov. 21, 2023).  Courts in this District have held that plan terms, not clinical coverage guidelines, control and have required coverage for multi-level ADR where the policy allowed it despite contrary guidelines.  Guideline excerpts alone therefore cannot plausibly establish falsity or materiality for any exemplar.  (Lanman Mot. at 11–12) (citing *Dubaich v. Cigna*, 2013 WL 3946108, at *9 (C.D. Cal. July 31, 2013); *Schubert v. Anthem Blue Cross Life*, 2016 WL 11756703, at *3 (C.D. Cal. Jan. 29, 2016)).

Because the SAC fails to tie the alleged misrepresentations to an actual contractual exclusion or plead with particularity that claims were submitted with intent to defraud, the IFPA claim is insufficient under Rule 9(b). As the Court has already dismissed this claim without prejudice before and Relator was unable to sufficiently amend, the Court now concludes that the Fifth Cause of Action should be dismissed with prejudice as to all defendants.

### D. FCA Conspiracy

To state a claim for conspiracy under the FCA, Relator must allege that Cedars-Sinai "agreed with one or more persons to get a false or fraudulent claim allowed or paid by the United States," that "one or more conspirators performed any act to effect the object of the conspiracy," and that "the United States suffered damages as a result." *United States v. B & H Educ. Inc.*, 2015 WL 13919323, at *4 (C.D. Cal. Aug. 24, 2015). Because FCA conspiracy is a fraud-based claim, it must also meet Rule 9(b)'s heightened pleading standard. *Island Indus., Inc. v. Vandewater Int'l Inc.*, 2019 WL 6917927, at *5 (C.D. Cal. Sept. 3, 2019).

Applying traditional civil conspiracy principles, Relator must allege "that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful agreement." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999); *Integra Med Analytics LLC v. Providence Health & Servs.*, 2019 WL 3282619, at *22 (C.D. Cal. July 16, 2019), rev'd on other grounds, 854 F. App'x 840 (9th Cir. 2021). Allegations of parallel conduct or reckless disregard for downstream billing consequences are insufficient; Relator must plausibly allege that Cedars-Sinai and its alleged co-conspirators jointly intended to submit false claims. *Integra*, 2019 WL 3282619, at *22.

Here, the SAC includes a bare assertion that "Defendants conspired with each other to commit the violations alleged," (SAC ¶ 440), and that they performed acts such as "blocking operating rooms" and "falsifying medical records," (SAC ¶ 441). But the complaint does not plead any facts showing a meeting of the minds or

14

agreement to violate the FCA. At most, it describes Cedars-Sinai's alleged failure to prevent or respond to misconduct by affiliated physicians. The third cause of action is therefore dismissed without prejudice.

### E. Reverse FCA Claim

Relator concedes that his reverse FCA claim under 31 U.S.C. § 3729(a)(1)(G) should be dismissed. (Opp'n at 22). Accordingly, the Fourth Cause of Action is dismissed with prejudice.

### F. Statute of Limitations

Relator's direct FCA claims are barred to the extent they rely on conduct occurring before September 9, 2010. Under 31 U.S.C. § 3731(b), an FCA claim must be filed within the later of: (1) six years after the violation, or (2) three years after the responsible government official knew or should have known of the material facts, but in no event more than ten years after the violation. Because the original complaint was filed on September 9, 2020 (Dkt. 1), claims predating September 9, 2010, are untimely.

Relator's IFPA claims are barred to the extent they rely on conduct before September 9, 2012, or discovery of the alleged fraud before September 9, 2017. Under Cal. Ins. Code § 1871.7(l)(2), no action may be filed more than eight years after the violation. In addition, § 1871.7(l)(1) provides a separate three-year limitations period from the date the plaintiff discovers the facts constituting the grounds for the action. Therefore, to be timely, an IFPA claim must be based on (1) conduct occurring after September 9, 2012, and (2) discovery occurring after September 9, 2017.

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows, as to all defendants:
- The FCA claims (First and Second Causes of Action) are **DISMISSED** with prejudice to the extent based on conduct before September 9, 2010, and **DISMISSED** with prejudice to the extent based on the informed consent theory

involving fellows.  The FCA claim based on the ADR theory is **DISMISSED** with prejudice. The FCA claim based on the concurrent surgery theory is **DISMISSED** without prejudice.

- The FCA conspiracy claim (Third Cause of Action) is **DISMISSED** without prejudice.
- The reverse FCA claim (Fourth Cause of Action) is **DISMISSED** with prejudice.
- The IFPA claim (Fifth Cause of Action) is **DISMISSED** with prejudice to the extent based on conduct before September 9, 2012, or discovered before September 9, 2017, and **DISMISSED** with prejudice as to the ADR theory.

The Court further **GRANTS** the joinder (Dkt. 116) of Defendants Bae, Rasouli, Delamarter, Cuéllar, and Lanman in Cedars-Sinai's Motion for Sanctions. Accordingly, the sanctions awarded in the Court's prior Order (Dkt. 145) apply equally to Cedars-Sinai and to the surgeon defendants who joined in the motion.

**IT IS SO ORDERED.**

Dated:  September 9, 2025

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE